The next two cases we're going to hear together, the last two cases, Onoquar et al, 21-3086, and Mendon and Pellman v. SSAC et al, 21-3088 Mr. Katz, you represent both the sets of appellants. And I see you have reserved two minutes for rebuttal, go ahead. Yes, Your Honor. Let me, first of all, may it please the court, let me, may it please the court, let me just jump right into what I expect to be asked about, which is, what exactly is the scope of the decision on review here? Because I heard the questions with respect to the injunction, and I'm going to assume you have the same questions with respect to the final judgments in my case. I think everyone agrees that final judgments and injunctions are appealable as a matter of right. And I think it should be, it should go without saying that the right to appeal entails the right to meaningful review of what happened. It's like, the analogy that I think of is, if you had a preliminary injunction in a trademark case, and it was appealed, the argument would be, well, you can't consider whether the district court was right about likelihood of confusion and irreparable harm, or you have to assume all that's right, and then ask, was it an abuse of discretion to issue an injunction? That is not how it works in any area of law, and it's not how it should work here. The fact is, the district court almost as an afterthought, after issuing an injunction, and without any notice or opportunity to be heard, said, and additionally, the Canfield amended actions are moot, they're dismissed. Now, I don't know if he meant mootness in the Article 3 sense, I don't know if he meant- I think he meant duplicative, they're duplicative. If there's a mandatory class, and the claims of your clients are in that mandatory class, if there's other individual lawsuits related to those claims, courts do it all the time, say this is duplicative of the claims that are before me in this other case, those are dismissed without prejudice. The court did use mootness in the transcript, but I don't think it's mootness. The claims aren't moot, they're alive in the class action, they're duplicative of the class action. Why is that incorrect? And I'll accept that it could have been duplicativeness, which is, of course, what they tried to argue on appeal. Duplicative dismissals are immediately appealable. I mean, yeah, first file rule dismissals are appealable. We say this in our reply brief. All right, so if it's immediately appealable, we could say it's not an abuse of discretion to dismiss a duplicative claim when you have a mandatory class. If someday that mandatory class gets decertified or goes away or gets reversed, then you could re-institute that action, right? Now, I think, and the decision that I think is the best is the one Judge Walker wrote in the Sacerdote, the 2019 case. And what Judge Walker explained is that the first file rule is sort of like a close cousin to res judicata, right? If the first case has gone to judgment, you look at whether it's preclusive of the second case to decide whether it's duplicative. If you're doing, if it's a first file rule issue, you look at whether a judgment in the first case would be duplicative when it's finally reached. I'm sorry, would be preclusive when it finally goes to judgment. And what happened in Sacerdote is the court reviewed the allegations in the allegedly first filed case. And specifically held that it would not be preclusive, and therefore it was reversible error to dismiss the second case as duplicative. And that's essentially what we have here. You have a dismissal that's, to my view, it's about as final as it could be. He not only closed the case, he enjoined us from refiling anywhere else. He's clearly done with our case. It is a final judgment. We have a statutory right to appeal, and I think the right to appeal means you have to look at the reasons why he dismissed it. And it's not enough to just say, there was a class cert that was entered in a very related case. And then at the end of a transcript on an injunction, he dismissed our case. And therefore, we can't review the reasons why he dismissed our case. That's not how it's supposed to work, and that's a violation of our statutory right to appeal. And I understand the notion that maybe we should just kick the can down the road and let's see what happens. But let's look at what's going on here. I mean, a company compelled, and I realize we're collateral, sort of collateral damage in the whole arbitration. A company compelled 500 of its employees and retirees to arbitrate. It arbitrated against them and lost. And now rather than trying to settle with them, they're trying to settle with another lawyer who's willing to take less money. It's just an outrage. There's no way that this could survive on a final judgment. And you now have a situation where the two district courts, neither one is going to yield to the other. The Western District of Missouri is not going to let Judge Carter, what I think the Western District views as usurping her jurisdiction over these arbitrations and the awards. And Judge Carter's not going to yield either. This is not a good situation, and it's a situation that you could put to an end right now, because the merits in our view are very straightforward. Could you certify a mandatory class based on the facts alleged here? Is there a risk of inconsistent adjudications that could prejudice DST? Is there a risk of prejudice to the other class members? Even today, I do not know exactly what the alleged prejudice is to the other class members or to DST. All we have is sort of airy statements that because of the nature of ERISA, it's automatically a mandatory class and it'll happen. And- It's a defined contribution plan. Right. Which makes it different from like an individual IRA and makes it closer to a defined benefit plan. And so, in our case law, and Cohen settles that issue from our standpoint, that a claim has to be brought in a representative capacity. And because it affects the mutual interest of anyone else who fits in, it's similarly situated. Now, I understand that in the Western District of Missouri, the district court judge may have disagreed with that. But this is here, and we have case law, we follow our case law. This is true. So, I mean, that ship has sailed. The Supreme Court disagreed with that after Cohen was decided. Well, thank you for telling me that. Now, I'll take that under consideration. I mean, it's not, it's a really- I read your brief. Thank you. All right, I don't, I appreciate that. I think the settlement itself undermines the argument for mandatory class. They're not treating everyone the same. It's not- When the settlement is done, if a settlement is done, the court will review it. But it seems a touch premature, based upon four sentences in a letter submitted just prior to oral argument, that we should then render a judgment from the Second Circuit. Don't you think? I'm not asking you to rule on propriety of the settlement agreement. You're asking us to rule on the appropriateness of a mandatory class. Yes. You haven't said that your clients don't fit within it, have you? No, we are class members. Well, you clearly fit within it, don't you? Of course, we're class members. Okay, so- I agree with that. So, it's a mandatory class. But you want your case to continue, notwithstanding the fact that the very nature of the reason why we have a class action is to eliminate multiple lines of litigation, so that there'll be one, where there are common issues of law fact, so that there's one resolution common to the class members. Yes, I do. That's what you want. That is how litigation- That's what you want. Yes, that is how litigation works. All right. In an antitrust case, it's a common question. Did the defendants conspire to fix prices? In a products liability mass tort, there's a question, is the product capable of causing cancer? None of those are arguments for a mandatory class. Those are just basic, common issues under 23A. They're not issues that would justify a mandatory class, and I don't think there's anything special about ERISA. And just to circle back to one thing you said, it is a defined contribution plan, and as a practical matter, it is no different than an IRA. These people had an individual account- Who made the decisions as to where their money was invested? The individual, the employee, or the plan fiduciary? Ruane Cunich. Which just makes it a touch different from a 401k, doesn't it? No, because it doesn't, I could set up an IRA, and I can hire an investment advisor to invest it for me. It doesn't change the fact that it's my compensation. I agreed with my employer that I'm going to get paid deferred compensation. But they didn't pick the advisor, and that's the whole nature of your claim. That the advisor that they picked gave them bad advice because he was overly invested in the stock, which was rising meteorically and then sinking meteorically. Right, and if it were an IRA, and Ruane were managing it, and the exact same thing happened, it would not be a mandatory class. Are the issues, in fact, the same between your two clients? Between the seven clients I represent? Are they the same? By and large, they were, I mean, they worked at different times, so there are some different issues there, but yes, it's essentially the same. Thank you, Mr. Cash. You have two minutes in rebuttal, and you're here again for Mr. Clayton. Thank you, Your Honor. We do not believe that the underlying class issue here comes up on this appeal. And it's not as if that underlying issue is getting lost. There was a 23F petition. These, the Canfield and Menden groups filed their own 23F petition, so they sought review in this court as was appropriate under 23F. That was denied. They also opposed class certification, as they had the right to do in Judge Carter's courtroom. So they participated as any intervener would, for example, on the litigation of the class question. And there is indeed a motion to decertify that was filed just recently, even though these appeals were pending. And Judge Carter's going to rule on that. We just extended the briefing. They're going to be welcome to ask again for that issue. And if this was a situation where they were allowed here to now bring up the certification question for appeal, I think that would be unprecedented. And it also could have significant ramifications for 23F and the circuit courts. For example, here, the action they filed was another action in the Southern District. But for example, there could be somebody in a mandatory class certified in the Southern District who lives in Los Angeles. You can go then and say, I'm going to file a separate action in Los Angeles, in the Central District California. Have the Central District California say, that's duplicative of the Southern District action. And then say, I'm going to the Ninth Circuit now. And now because I was dismissed in Los Angeles because New York certified a class, I want the Ninth Circuit now to rule on the propriety of the Southern District class. 23F doesn't apply because I got a final judgment. Never seen anyone try that. And 23F, this court probably knows the history. I've been practicing long enough, so I remember when there was no 23F, it was a lot harder to get up. But that is the procedure that should be followed here. And Judge Carter recognized when he issued his class certification order, I mean it was, to my mind, we were all on the phone, he read the order on the phone. It was clear, I think, it was certainly clear to us at least, of course, if he's certifying a mandatory class and he's got two other individual actions, of course they would be dismissed. And also the arbitration question doesn't even affect these parties. They did not sign the arbitration agreement. They're individual litigants just like something like 8,500 people in the class. So it is difficult for us with respect to understand how they even argue that the question of the arbitrability of these claims is germane to their case. They are not arbitrating. They just filed another individual action sitting in the same court assigned to Judge Carter. They're not getting lost. This really is little more, I respectfully submit, than docket management. This is how an experienced district judge manages the docket. So we think the issues here are relatively simple and unless the court has questions, which I would look forward to addressing, I think we would rest on the briefs on this question. I don't think there are any questions. Thank you, Your Honor. All right, Mr. Caccio, two minutes. Thank you. Let me address the question that Mr. Clayton posed, which is whether this has ever happened before. Something almost exactly the same happened in the Hecht case from 2012, and Judge Walker, you were on the panel on that. And you may remember that the appellee made the same argument they made here, that you cannot consider the propriety of the certification in the Eastern District of New York. That's something that has to be raised in the Eastern District, and the panel rejected that. That was a case where a class member filed suit in the District of Connecticut, and the defendant successfully got a registered ACADA dismissal based on a certified class in the Eastern District. This court reviewed it. This court independently looked at whether the notice and opt-out right was appropriately vindicated. You have a better memory of that case than I do. However, I don't recall that it came up on the basis of the question of whether an all writs act could be issued, an injunction could be issued, in connection with a class certification. No, I don't believe there was an injunction, but the case was dismissed. Right, but that's- We were dismissed. That's what we're looking at now. Our cases were dismissed. Your cases were dismissed, right? Right. But, okay, so, but your cases were dismissed here, but why isn't this just simply docket management, as your adversary said, and as duplicative of members of the class who were covered by the class? Well, duplicativeness would not take it outside of the scope of the final judgment rule. It would still be appealable. That's an issue that this court reviews on appeal all the time, including in Sacramento that I mentioned earlier. Our case, if it was duplicative, the only difference between this and a res judicata dismissal is that there's no judgment yet. It's just a prediction that there will be a judgment, and the judgment will validly bind us. If that's not correct, if the judgment would not validly bind us because there's no basis for a mandatory class and a claim for money damages, and there has to be a right to opt out, which is the exact amount- Of the class, from the class, of cases that have been arbitrated and lost. I'm sorry, there's a carve out from the class of- A carve out from the operation of the class for cases that have been arbitrated and lost. I don't understand the question. But are subject to appeal. You lost the vote, didn't you? No, I do not represent arbitration claimants. I represent seven individuals who filed, who did not agree to arbitrate, largely because they- Right, right, okay. All right, thank you, Mr. Katz, and thank you both for a reserved decision, and have a good day. So that completes the business of the court, and with thanks to our courtroom deputy, Ms. Beard, I would ask that she adjourn court. Court is in.